# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZAHRA AFIANIAN, | Case No. CV 17-7643 FMO (RAOx) |
| Plaintiff, | |
| v. | **ORDER RE: PENDING MOTIONS** |
| CHAD F. WOLF, et al., | |
| Defendants. | |

Having reviewed all the briefing filed with respect to the parties' Motions for Summary Judgment (Dkt. 118, Motion), the court finds that oral argument is not necessary to resolve the motions, see Fed. R. Civ. P. 78(b); Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.[1]

---

[1] The Central District has been dealing with a judicial shortage that has resulted in "a crisis of unprecedented magnitude" in administering justice. See Blaise Scemama, "State's Judicial Chiefs Plead With Congress to Fill Vacancies," Los Angeles Daily Journal (Oct. 19, 2019); Andrew Kragie, "Empty Calif. Judgeships Pose Danger to Justice, Judge Says," Law360 (Nov. 1, 2019). Currently, there are seven vacancies out of the 28 authorized judgeships to serve a population of more than 19 million people. Of course, the COVID-19 pandemic has only complicated and exacerbated the judicial emergency in this District. See Meghann Cuniff, "Pandemic Adds More Uncertainty to Central District Judge Shortage," Los Angeles Daily Journal (Apr. 13, 2020). Once the pandemic subsides, and normal operations resume, the backlog of cases, especially criminal cases which take precedence over civil cases, will be significant. See Madison Alder, "Short-Benched U.S. Trial Courts Face Post-Pandemic Crisis," Bloomberg Law (Apr. 9, 2020) ("But when the pandemic is over and those postponed proceedings start getting scheduled again, courts . . .

"When reviewing agency decisions under the APA, a court may only set aside a final agency decision if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' or 'unsupported by substantial evidence[.]'" Kim v. Baran, 2014 WL 12573361, *2 (C.D. Cal. 2014) (quoting 5 U.S.C. § 706). An agency decision is "arbitrary and capricious" when "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Beno v. Shalala, 30 F.3d 1057, 1073 (9th Cir. 1994) (quoting Motor Vehicle Mfr. Ass'n v. State Farm Ins., 463 U.S. 29, 44, 103 S.Ct. 2856, 2867 (1983)).

Here, the court finds the action should be remanded because it appears that the Board of Immigration Appeals ("BIA") (and U.S. Citizenship and Immigration Services ("UCCIS")) relied on factors which Congress did not intend for it to consider, namely whether Iran applies Islamic law. (See Dkt. 52-2, Certified Administrative Record ("CAR") 4) (noting that USCIS "found that adoption does not exist in Iran because the country's legal system is based on Sharia law, which only allows for guardianship" and explaining that "according to the Foreign Affairs Manual, 'Legal adoption for the purpose of immigration does not exist in foreign states that apply Islamic law in matters involving family status'"); see 8 U.S.C. § 1101(b)(1)(E) ("The term 'child' means an unmarried person under twenty-one years of age who is . . . a child adopted while under the age of sixteen years if the child has been in the legal custody of, and has resided with, the adopting parent or parents for at least two years[.]"). Also, remand is warranted because it does not appear

---

. with a high percentage of judicial vacancies [] will be among the least equipped to deal with the backlog."). Civil cases will be delayed for significant periods of time until the court is able to catch up on the criminal cases. See Carl Tobias, "Filling the California Federal District Court Vacancies," 11 Cal. L. Rev. Online 68, 82 (2020) (discussing implications of judicial shortages in, among others, the Central District and stating: "Trial judges finally decide ample civil lawsuits, and criminal matters realize precedence under the Speedy Trial Act, while the four districts in California receive filings which are practically sixty-three percent higher than the countrywide average, . . . and the Central District addresses civil dockets that are nearly double the national average.") (internal quotation marks and footnote omitted). Accordingly, and in the interest of conserving judicial resources, the court will not set forth facts, with which the parties are familiar. The court notes, however, that it has reviewed all the briefing and evidence submitted by the parties.

that the BIA considered an important aspect of the problem – the actual parent-child relationship between plaintiff and Yaghoot[2] as established by the Iranian courts' award of custody and guardianship to plaintiff.  In other words, the BIA failed to consider Iran's civil laws regarding adoptions (custody and guardianship), (see Dkt. 52-5, CAR 172-79), and plaintiff's submission of the relevant civil code provisions.  (See, generally, Dkt. 52-2, CAR 3-5).

**This Order is not intended for publication.  Nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

Based on the foregoing, IT IS ORDERED THAT Defendants' Motion for Summary Judgment **(Document No. 118)** is **denied** and Plaintiff's Motion for Summary Judgment **(Document No. 118)** is **granted in part** as set forth in this Order.  The court remands this matter for further proceedings consistent with this Order.

Dated this 24th day of September, 2020.

                                                         /s/
                                       Fernando M. Olguin
                                   United States District Judge

---

[2] Yaghoot's biological parents died when she was three-years old, (Dkt. 118-1, Statement of Uncontroverted Facts ("SUF") at P5; Dkt. 52-5, CAR 191), and plaintiff is her maternal grandmother.  (Dkt. 118-1, SUF at P1-2).  After Yaghoot's parents died, her maternal grandparents, including plaintiff, and her paternal grandparents fought over her custody, (Dkt. 52-3, CAR 82-85 & 88), and plaintiff was ultimately granted guardianship on January 4, 2010.  (Id. 92-93).